UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DYNAMO INVESTMENTS LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHERN LIGHTS<br>SEMICONDUCTOR CORPORATION,<br>and JAMES C. LAI,<br><br>Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT** |

Plaintiff Dynamo Investments Limited ("Dynamo") by and through its undersigned counsel, as and for its Complaint against the above-named Defendants, alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1. This Honorable Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2), inasmuch as this action is between a citizen or subject of a foreign state and citizens of a State, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Venue is proper pursuant to 28 U.S.C. §1391(b).

## THE PARTIES

3. Plaintiff Dynamo is a corporation or other business entity organized and existing by virtue of Samoan law, with its principal place of business at No. 111, Sec. 2, Zhongzheng E. Rd., Tamsui District, New Taipei City, Taiwan 251.

1

4. Defendant Northern Lights Semiconductor Corporation ("NLSC") is a Delaware corporation with its principal place of business at 15301 Highway 55 West, Plymouth, MN 55447.

5. Defendant James C. Lai ("Lai") is a United States citizen domiciled in Minnesota with an address at 1901 Roselawn Avenue, St. Paul, MN 55113.

6. At all relevant times, Lai held himself out interchangeably as the Chairman, President, Chief Executive Officer, and majority shareholder of Defendant NLSC, as well Western Lights Semiconductor Corporation ("WLSC"), a related entity discussed below.

7. During October 2005, Defendant Lai approached Plaintiff with a product and investment presentation during which Lai claimed: (a) that he was the chief executive of Defendant NLSC; (b) that NLSC had developed the capability to produce Magnetic Random Access Memory (MRAM); and (c) that this particular product would be able to replace Static Random Access Memory (SRAM) and Dynamic Random Access Memory (DRAM), as well as other types of random access memories.

8. Defendant Lai also claimed that MRAM possessed, *inter alia*, the benefit of reliability far in excess of the other RAM systems available on the market.

9. Defendant Lai further claimed at this meeting and in his presentation materials that Defendant NLSC would be able to generate revenue of $11,090,000 in the first year, $59,810,000 in the second year, $119,555,000 in the third year, and $283,799,000 in the fourth year, by marketing and selling this new product.

10. Based on these representations, Defendants sought a substantial investment from Plaintiff ostensibly for NLSC to manufacture and sell MRAM products.

11. Thereafter, in reliance on the foregoing representations, Plaintiff wired $400,000 to Defendants as an investment on November 8, 2005, followed by another $350,000 on December 12, 2005, $100,000 on June 19, 2006, $120,000 on September 8, 2006, and $80,000 on October 19, 2006.

12. In exchange for such investment, Plaintiff received 1.5 million shares of stock in NLSC.

13. Defendants and Plaintiff also entered into an investment agreement on January 22, 2006, with an effective date of November 7, 2005 ("Investment Agreement"), wherein NLSC agreed, *inter alia*, as follows:

> **4. COMPANY OBLIGATIONS**
>
> 4.1 Upon completion of Investment as outlined in sections 1.1 and 1.2, and before the election of the new board as outlined in section 4.3, Company agrees to notify Investor of all significant events, including but not limited to capital equipment purchase, investment, contracts, and change in share structure.
>
> 4.2 Upon completion of Investment as outlined in sections 1.1 and 1.2, Company agrees to provide Investor with monthly and annual financial report.
>
> 4.3 At the closing of the purchase and sales of Preferred Stock (the "Closing"), Company agrees to hold a shareholders meeting to elect a new board.

14. Thereafter, Defendants failed in every material respect to report any information regarding NLSC and its activities, financial or otherwise, to Plaintiff.

15. Furthermore, despite repeated requests, NLSC continually demurred from holding shareholders' meetings.

16. Ultimately, in April 2010, Defendants indicated that an NLSC shareholders' meeting would take place on May 8, 2010. Defendants also requested a proxy from all

investors be given to Defendant Lai to vote their shares in NLSC. When the proxies were not forthcoming, the meeting was adjourned and then cancelled.

17. Since that time, Defendants have made no report of NLSC's activities to Plaintiff up to and including the present date, despite repeated requests for same and a continuing duty to do so.

18. In addition, an audit was conducted of NLSC upon the demand of Plaintiff and other investors in 2010, by the accounting firm of Ballenthin Funk & Johnson LLP ("BFJ").

19. According to an August 29, 2010 letter sent by Defendant Lai on NLSC letterhead, the audit of NLSC covered "the period from inception through December 31, 2009."

20. Upon completing their audit in 2010, the BFJ accountants reported that NLSC: (a) had never been profitable; (b) had not actively developed any business with respect to the products that it represented to Plaintiff as being in development; (c) had no sales revenue or any cost of sales entries in its books; (d) did not maintain sufficient records to prove it followed appropriate procedures for stock issuance; and (e) issued stock that was in excess of the amounts allowed by its articles of incorporation. The BFJ auditors also found that NLSC stockholders may have a right of rescission due to the company's procedures for issuance stock.

21. This same set of circumstances was confirmed by NLSC's auditors for the years 2010 through 2012.

22. At all relevant times, and although duly demanded by Plaintiff and other investors, Defendants have failed to account for the use of investment funds, and have been unable to demonstrate any meaningful commercial activities whatsoever on the part of NLSC other

than the purchase of some real estate in the State of Wisconsin, the use of which is uncertain and undisclosed by Defendants.

23. Upon information and belief, Plaintiff further contends that Defendant Lai has used funds that Plaintiff invested in NLSC for the purchase of real estate in the names of certain family members, and that he (as the dominant shareholder) has used and siphoned funds for other personal uses, never accounting for same.

24. Accordingly, Defendant Lai has abused and disregarded NLSC's corporate form to his own personal benefit and to the detriment of Plaintiff and other investors/shareholders.

25. Defendant Lai's activities in raising investment for NLSC were directed largely to residents of the Republic of China (Taiwan). In March 2015, a criminal Board of Complaint indictment was issued against Defendant Lai in Taipei District Court for criminal fraud and securities fraud in connection with Plaintiff's investment in NLSC, as well as funds from other Taiwan investors.

26. It is now clear that Plaintiff's investment was never used for the business development originally represented by Defendants to Plaintiff.

27. In addition, Defendant Lai formed the related entity WLSC shortly after receiving Plaintiff's investment in or about October 2006.

28. Upon information and belief, Defendant Lai transferred certain NLSC intellectual property rights, funds, and/or assets to WLSC as an alleged spin-off without NLSC shareholder approval.

29. Defendant Lai has represented that WLSC is staffed by NLSC personnel, operating from the same offices and facilities, and that WLSC has been funded by NLSC.

30. Plaintiff reserves the right to seek leave to amend its pleadings and to add WLSC as an additional defendant to this action, particularly as Plaintiff expects discovery to reveal *inter alia* that NLSC and WLSC are alter egos of each other and that Defendant Lai has disregarded their corporate formalities.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINNESOTA SECURITIES ACT)

31. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 30 as if the same were fully set forth at length herein.

32. The Minnesota Securities Act, in relevant part, makes it unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:

   (1) to employ a device, scheme, or artifice to defraud;

   (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make a statement made, in the light of the circumstances under which it is made, not misleading; or

   (3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

33. Defendants knowingly made material misrepresentations and omissions in soliciting investment funds from Plaintiff, all as outlined above.

34. Said misrepresentations were negligent to the extent Defendants knew or should have known the misrepresentations were false and designed to induce Plaintiff to invest in NLSC.

35. The misrepresentations and omissions lead to the issuance of stock in Defendant NLSC in exchange for Plaintiff's monetary investment.

36.   Plaintiff relied upon Defendants' misrepresentations and omissions, particularly Defendant Lai's representation that NLSC was successfully developing a new product for the market.

37.   Plaintiff has suffered economic loss of its entire investment, about which it is unable to learn any information from Defendants.

38.   Plaintiff would not have suffered this loss but for the misrepresentations, negligence, and omissions of Defendants.

39.   By reason of the premises, Plaintiff has suffered a loss of $1,050,000, no part of which has been paid, although duly demanded.

## SECOND CAUSE OF ACTION
## (BREACH OF FIDUCIARY DUTY)

40.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 39 as if the same were set forth at length herein.

41.   Defendants obtained the trust and confidence of Plaintiff and bound themselves under the Investment Agreement to faithfully report to Plaintiff about the finances of NLSC on a regular basis and to account for the use of Plaintiff's investment funds.

42.   Defendants restructured the company in 2007 without shareholder approval, thereby diluting the value of shares held by investors while simultaneously increasing Defendant Lai's stake in the company.

43.   Plaintiff relied upon Defendants to provide the information required under the investment agreement.

44.	Defendants breached their fiduciary duty to Plaintiff by virtue of the foregoing and by failing to: (a) act in the best interests of all shareholders; and (b) account for the financial activities of NLSC.

45.	By reason of the premises, plaintiff has suffered a loss of $1,050,000, no part of which has been paid although duly demanded.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

46.	Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 45 as if the same were set forth at length herein.

47.	The foregoing facts demonstrate that Defendants breached the Investment Agreement entered into with Plaintiff as of November 7, 2005.

48.	By reason of the premises, Plaintiff has suffered damages in the amount of $1,050,000, no part of which has been paid, although duly demanded.

### FOURTH CAUSE OF ACTION
### (NEGLIGENCE AND NEGLIGENT MISREPRESENTATIONS)

49.	Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 48 as if the same were set forth herein at length.

50.	Defendants' representations that NLSC had developed MRAM capability, and was in the process of manufacturing and selling a MRAM product, were never true.

51.	Defendants knew, or should have known, that such representations were not true at all relevant times.

52.	By making these false representations, Defendants intended to induce Plaintiff to invest money with Defendants.

53. By virtue of these misrepresentations, Plaintiff reasonably considered NLSC to be a worthy investment, and thus wired $1,050,000 to Defendants for that purpose.

54. At all relevant times, Defendants had a duty of care to honestly deal with Plaintiff and fairly represent the investment opportunity that they claimed NLSC to be.

55. By obtaining investment payments from Plaintiff under false premises, Defendants breached that duty, thereby directly causing Plaintiff to suffer $1,050,000 in damages, no part of which has been paid, although duly demanded.

### FIFTH CAUSE OF ACTION
### (ALTER EGO LIABILITY/ CORPORATE VEIL PIERCING)

56. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 55 as if the same were set forth herein at length.

57. Defendant Lai formed Defendant NLSC with insufficient capitalization relative to the nature of NLSC's business and the risks attendant to such business, and therefore sought substantial investments from Plaintiff and other investors in Taiwan.

58. Thereafter, Defendants failed to observe corporate formalities by *inter alia*: not maintaining sufficient business records; not holding regular shareholder meetings; not reporting NLSC's business activities to its shareholders; and issuing stock in excess of the amounts allowed by NLSC's articles of incorporation.

59. In addition, Defendant NLSC has failed to pay dividends to its shareholders, including Plaintiff, while Defendant Lai has siphoned funds from NLSC for improper uses.

60. Upon information and belief, Defendant Lai dominates NLSC as its majority shareholder, such that NLSC's other officers and directors are either nominal or non-functioning.

61. Based on the foregoing circumstances, it would be manifestly unjust and fundamentally unfair for Defendant Lai to evade liability and/or shield himself personally from the liability of Defendant NLSC to Plaintiff.

62. Accordingly, it is proper under the circumstances to pierce the corporate veil of Defendant NLSC and to hold Defendant Lai personally liable to Plaintiff on all causes of action asserted against NLSC herein.

WHEREFORE, Plaintiff Dynamo prays:

1. that process in due form of law according to the practice of this Court may issue against Defendants;

2. that judgment be entered in favor of Plaintiff against Defendants, jointly and severally, on each of the foregoing causes of action for the amount of Plaintiff's damages, together with interest and costs; and

3. for such other, further, and different relief as this Court may deem just and proper under the circumstances.

Dated: St. Paul, Minnesota
May 6, 2015

LAW OFFICES OF DELIN QU

Delin Qu
MN No. 0240369
970 Raymond Ave, Suite G-60
St. Paul, MN 55114
(651) 494-0300
delinqu@gmail.com